STATE *vs.* EDWARD WILLIAMS AND MARY ANN AVERY.

Dying declarations are admissible only as to those things of which the declarant would have been competent to testify if sworn in the case; and if they be not the statement of a fact, but merely the expression of the opinion of the deceased, they are inadmissible.

Therefore, where the deceased, who was shot at night in a house from the outside through an aperture in the logs, declared, while *in extremis,* " It was E. W. who shot me, though I did not see him ;" *Held* that the declaration was inadmissible.

The decision of a Judge as to the admissibility of the declarations of a deceased person, made just before his death, comprises a decision both of *fact* and of *law.* *Of fact,* as to what were the declarations, and as to the circumstances under which they were made. *Of law,* as to whether the declarations were admissible alone or in connection with the circumstances. On the former, the Judge's decision is final. On the latter, it is subject to review.

[*State* v. *Arnold,* 13 Ire. 184 cited, approved and distinguished. *State* v. *Shelton,* 2 Jon. 360, cited and approved.]

MURDER, tried before *Watts, J.,* at Spring Term, 1872, of the Superior Court of PITT.

The prisoners were indicted in several counts, Edward Williams for the murder of Silas Avery, and Mary Ann Avery for being accessory before the fact.

It was in evidence that the deceased was shot after dark, in his house, by some one standing outside, through an aperture between the logs of which the house was built. He was sitting by the fire, with his side near the aperture, and was shot in the side.

On the trial, the State proposed to give in evidence the dying declarations of the deceased. Upon examination of witnesses as to his condition at the time of the declarations, and the circumstances attending them, his Honor held that the deceased was *in extremis*, and the declarations were admissible as dying declarations. Thereupon a witness, Lucinda Wainwright, was permitted to state the declarations of the deceased, to wit: that he knew who shot him. "It was Edward Williams who shot me, though I did not see him." The witness further stated that, in reply to a question asked the deceased by her as to who shot him, he said, "I don't know what those poor creatures shot me for; it was Ed. Williams who shot me, but I did not see him." The counsel of the defendants excepted to the admission of the testimony. They contended that the declarations should be entirely excluded from the jury; but the Court ruled that they were admissible, under the circumstances, for what they were worth, and charged the jury to be careful in weighing these declarations, but to consider them in connection with the other testimony in the case, and give them what weight they were entitled to. Defendants' counsel again excepted.

Verdict of guilty. Rule for a new trial discharged. Judgment, and appeal by the defendants.

*Attorney General, Battle & Son,* and *Dupre* for the State. *Johnston & Nelson* for the defendants.

RODMAN, J. The admission of dying declarations is an exception to the general rule of evidence, which requires that the witness should be sworn and subject to cross-examination. The solemnity of the occasion may reasonably be held to supply the place of an oath. But nothing can fully supply the absence of a cross-examination. In consequence of this absence, such declarations are often defective and obscure. Hence, several eminent Judges have felt it a duty to say that they should be received with much caution, and that the rule which authorizes their admission should not be extended beyond the reasons which justify it. (See note to *Rex* v. *John,* 2 Leading Crim. Cases 396. *Regina* v. *Hinds,* Bell, C. C. 256. *Regina* v. *Jenkins,* Law Rep. 1 C. C. 1 Phil. Ev. 292, and opinion of *Lord Denman* in Sussex Peerage Case, 11 Clark & Fin. 112. And this is the more important as such declarations, when received, have great, and sometimes undue weight with juries.

It is settled on authority, and is consistent with reason, that if the declarant would not have been permitted to testify had he survived, either because he was too young to comprehend the nature of an oath, or was disqualified by infamy, or imbecility of mind, his dying declarations are inadmissible. *Rex* v. *Pike,* 3 Car. and Payne 598. *Regina* v. *Perkins,* 2 Moody C. C. 135. *Rex* v. *Drummond,* 1 Leach C. C. 337–38.

It is equally clear that such declarations are admissible only to those things to which the declarant would have been competent to testify if sworn in the case. Consequently, if they be not the statement of a fact, but merely the expression of the opinion of the deceased, they are inadmissible. And so, if merely hearsay, or irrelevant. 2 Lead. Cr. Cas. 404. *Rex* v. *Sellers,* Carrington's Crim. Law, 233. *Oliver* v. *the State,* 17 Alabama 587. *Johnson* v. *the State,* Id. 687.

It is contended, for the prisoners, that the declarations in this case were nothing more than the expression of an opinion or belief.

The case states, that Lucinda Wainwright testified that the

deceased said : " He knew who shot him. To which she replied that she did not know. Then deceased said, it was Edward Williams, though I did not see him." Further, in reply to a question by witness as to who shot him, deceased said, " I don't know what those poor creatures shot me for ; it was Ed. Williams who shot me, though I did not see him."

The case further states that the deceased was shot after dark, while sitting in his house at the fire-place, with his right side near an aperture between the logs of the outer wall, about three inches wide. The shooting was done through the aperture by some person standing on the outside of the house. The wounds were in the right wrist and side.

It was said for the State that every allegation of the identity of a person is necessarily the expression of an opinion only, because it is a conclusion drawn from a comparison of the appearance of the person at one time, with the recollection of his appearance at some other time. This is true ; but the admission of such evidence is an exception to the general rule excluding opinions, founded on the necessity of the case. Best on Evidence, sec. 349.

But there must be some limit to the exception : a witness cannot be allowed absolutely to substitute his judgment for that of the tribunal to whom the law has committed the decision of the fact. . Best Ev. sec. 344–5–6. We think the limit may be drawn without any difficulty, and consistently with the habitual practice of Courts. Whenever the opinion of the witness upon such a question, or on one coming under the same rule, is the *direct* result of observation through his senses, the evidence is admitted. As, for example, when a witness has seen a person or object at several times, and expresses his opinion as to the identity of what he saw at one time with what he saw at another, as human language is inadequate to convey to the mind of another person fully and accurately the impression made upon the mind of the witness through his sense of sight, his opinion, as the result of that impression, is

admitted, and is entitled to more or less weight, according to the circumstances. And although opinions, as derived, may sometimes be erroneous, yet they are not generally so, and when carefully weighed are sufficiently reliable for practical use in the ordinary affairs of life. The witness does not *unnecessarily* substitute his judgement for that of the tribunal.

But if the opinion of the witness is the result of a course of reasoning from collateral facts, it is inadmissible. As, for example, if at the time to which the question of identity applied he did not see or have the testimony of any sense as to the person in question, but believed it to have been him because he might have been there, and had a motive to have been there and to have done the act alleged. In such a case the tribunal is as competent to reason out the resultant opinion as the witness is; and by the theory of the law, it alone is competent to do so. To allow any influence to the opinion of the witness would be *unnecessarily* to substitute him to the function of the tribunal.

Now, to apply these views to the language of the deceased. Must his words reasonably be understood to express an opinion as to the identity of his assailant with the prisoner, as the direct result of observation through his senses, or any of them? The deceased accompanied each declaration that it was Williams who shot him, with the qualification, " but I did not see him." He appears to have had in his mind an idea of the distinction which I have been endeavoring to draw, and to have wished to exclude the conclusion that his opinion was anything more than one founded on an inference from facts and motives which he may have supposed to exist, but which even if they were in evidence on the trial, (as to which the case is silent,) do not affect the present question. The deceased excludes sight as a source of his opinion. A Court is not at liberty to conjecture, that he might have heard the prisoner and identified him in that way, especially as there is no suggestion of that sort in the evidence.

We think that, whether we take the words of the deceased alone, or in connection with the circumstances of the assault, they do not purport, and were not meant to state, the identity of Williams with the assailant, as a fact known through the senses, and that, consequently, they were inadmissible.

The learned counsel who represented the State cited *State* v. *Arnold,* 13 Ire. 184, as in point. There is an obvious distinction between that case and this. In that, the deceased did not say that he did not see the prisoner; and it was possible that he did see him. The evidence in that case also suggested the possibility that his sense of hearing contributed to his identification of the prisoner. Moreover, in that case the exclamation of the deceased, being immediate upon the shooting, was admissible as part of the *res gestae.* 1 *Greenl. Ev.* sec. 156. *Com.* v. *McPike,* 3 *Cushing* 181. *State* v. *Shelton,* 2 Jon. 360.

It was contended for the State that, as upon the face of the declarations of the deceased, it was possible that he might have identified the prisoner through hearing, the Judge ought to have left them to be weighed by the jury and disregarded if worthless. But it is an inflexible rule that the Judge must decide all preliminary questions touching the competency of evidence. The instances and authorities for this are so numerous and familiar that it is unnecessary to refer to them.

From this, however, it is contended that the decision of the Judge, being upon a question of fact, is not subject to review. In our opinion, the decision of the Judge in this, as in analagous cases, comprised a decision both of fact and of law.

1. Of fact; as to what were the declarations of the deceased, and as to the circumstances under which they were made.

2. Of law; were the declarations admissible alone, or in connection with the circumstances?

On the first question the Judge's finding was final. On the second it was subject to review.

I will give a single illustration only of the doctrine here stated. The declarations of a deceased person, made in contemplation of impending death, are admissible. It is settled that the Judge passes upon the preliminary question of their admissibility. It is equally well settled that in doing so he finds the circumstances under which they were made; and also whether, considering the circumstances, they were made in contemplation of impending death. This last is a question of law. *Regina* v. *Smith*, *Leigh & Cave*, C. C. 627. *Donnelly* v. *State*, 2 Dutcher, 601. *Starkie* v. *The People*, 17 Illinois, 24-25. *Rex* v. *Welbourn*, 1 East. P. C. 358. *Rex* v. *Hucks*, 1 Stark. 523. 2 Crim. Cases, 400. *The State* v. *Arnold*, *ubi sup,*, is also to that effect.

We think, therefore, that the Judge properly undertook to decide the question of admissibility; but that (for the reasons given) he decided it erroneously.

Reade, J. *Dubitante.*

PER CURIAM.                                    *Venire de novo.*