AD LISTER *v.* THE STATE.

1. DYING DECLARATIONS.—See evidence held sufficient to satisfy the statutory requirements of the predicate necessary to proof of dying declaration. Pasc. Dig., Art. 3125.

2. SAME AS PROOF OF NAME OF DECEASED.—The dying declarations of the party killed are competent evidence to prove his name as laid in the indictment.

3. CHARGE OF THE REASONABLE DOUBT AS BETWEEN THE DEGREES OF MURDER.—See the opinion for distinction taken between the present case and the case of *Murray* v. *The State, ante* p. 417, relative to the necessity of giving in charge to a jury, in a murder case, the doctrine of reasonable doubt as between the degrees of culpable homicide.

4. ARRAIGNMENT.—This being a case of murder, and the record failing to show that the accused was arraigned, or pleaded to the indictment, the judgment of conviction is reversed on the grounds enunciated in the case of *Early* v. *The State, ante* p. 248.

Appeal from the District Court of Harrison.   Tried below before the Hon. A. J. Booty.

The appellant was found guilty of murder in the first degree, and his punishment assessed at confinement for life in the penitentiary.

*M. T. S. Keller* and *McAdoo & Russell*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

White, J.   The indictment in this case charged the defendant, Ad Lister, with the murder of one Joseph Dillon.

On the trial the state introduced in evidence the dying declarations of the deceased.   It was objected, at the time, to this evidence that the proper foundation or predicate had not been laid for its admission.   Our statute provides the rules necessary to be observed in determining the admissibility or rejection of such testimony.   "The dying declarations of a deceased person may be offered in evidence either for or against a defendant under the restrictions hereafter provided.   To render the declarations of the deceased competent evidence it must be satisfactorily proved :   1st. That at the time of making such declarations he was conscious of approaching death, and believed there was no hope of recovering.   2d. That the declaration was voluntarily made, and not through the persuasion of any person. 3d. That such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement.   4th. That he was of sane mind at the time of making the declaration."   Pasc. Dig., Art. 3125.

Applied to the evidence objected to, we think it will be

found that the state brought itself strictly within these rules, as shown by the evidence on that point, which we copy in this connection and with the further view of enabling us the better to appreciate another objection to the same testimony, which will be noticed and discussed hereafter.

Dr. E. P. M. Johnson, being sworn for the state, says: " I remember when a white man was shot, over near the fortification in the eastern portion of Marshall, last March (1876). I went to see him. He asked me for God's sake not to let him die on the streets, and asked for a Catholic priest, and said he was going to die. I tried to get a house near at hand to place him in, but, failing, I carried him to my office, in the town of Marshall. The deceased made a statement as to how he was shot. He made the statement to me, without any persuasion on my part or any one else. There were no interrogatories propounded to him calculated to elicit any particular statement, and what he said he repeated several times freely. He was of sound mind at the time he made the declaration or statement. He never revived from the time I first saw him up to his death, and when I first saw him he was in a collapsed state. He frequently remarked that he was going to die, and seemed exceedingly anxious that the priest should see him. After the priest came (Father Lowry was the priest), and he and the deceased had been left to themselves and separated, I returned, and found the deceased very much composed, and he again repeated the statement as to how he came to be shot, and said he was going to die. He had no change in his condition for the better from the first, and it is my best impression that he never had any hope that he would recover, and he was conscious of his condition. His statement was that he was in company with a friend, out in the eastern portion of the town, and that they heard the cries of a female, and went into a house, and there saw a negro man they called Ad Lister whipping a woman; that he

told him to quit, and that he cursed and said there were too many .d——d white men coming 'round that house, anyhow. Deceased told him that if he didn't stop he would make him, and did make him stop ; that Lister then started to go, and said, ' I'll be fixed for. you directly,' and went off ; that after some time he saw defendant coming, and with a pistol ; that he (defendant) raised the pistol to shoot, and that he was so far off he thought Lister would miss him ; and 'then it was my (deceased's) intention to close in on him (defendant) with my small pistol, and shoot him, but he made a d——d good shot, and killed me (deceased), and all for nothing.'

" The deceased said, in the same statement, that his name was Joseph Dillon ; gave some directions about his people that I don't recollect."

The 2d ground of objection to this testimony was that the court erred " in permitting the state to prove the name of deceased by the declarations of the deceased as part of his dying declaration."

It will be remembered that the indictment charged that the party murdered was named Joseph Dillon. The evidence shows that the deceased was a stranger, unknown to all the witnesses, and his name is nowhere mentioned save in the dying declarations which we have reproduced above from the testimony of Dr. Johnson. It is a familiar rule that the name of the party killed must be proved to be the same as that alleged in the indictment ; otherwise, a conviction cannot be sustained. *Hardin* v. *The State*, 26 Texas, 113. The question is : Can his name, as was done in this case, be proved by his own statements as to what his name was, made by him in his dying declarations? We have searched in vain for a case wherein this identical question has ever before, if at all, been presented.

Mr. Greenleaf lays it down as a rule that " the declarations of the deceased are admissible only to those things to

which he would have been competent to testify if sworn in the cause. They must, therefore, in general, speak to facts only, and not to mere matters of opinion, and must be confined to what is relevant to the issue.'' Greenl. on Ev., sec. 156 ; *The State* v. *Williams and Avery*, 67 N. C. 12 ; *Oliver* v. *The State*, 17 Ala. 587.

Mr. Wharton, in his '' Criminal Law,'' says : '' Nothing can be evidence in a declaration *in articulo mortis* that would not be so if the party were sworn. On this rule, anything the murdered person *in articulo mortis* says as to facts is receivable, but not what he says as matters of opinion or belief.'' 1 Whart. Am. Cr. Law, 678. See, also, 1 Phillips on Ev. (4th Am. ed.) 297.

Now, taking this to be the rule on the case before us, it is most clearly evident that, had the case been one of assault with intent to murder, for instance, and deceased had been sworn as a witness, he would have been competent to testify as to his name, and his testimony as to that fact—a fact most pertinent and most important to the issue to be tried—would have been perhaps more conclusive than if coming from the lips of any other witness ; in a word, would have been one of the most certain evidences of that fact. We can see no reason why this fact, contained in his dying declarations and as part thereof, and tending, as it did, expressly and positively to prove the *corpus delicti* as charged, was not competent and admissible as any other fact therein stated. See, specially, *Oliver* v. *The State*, 17 Ala. 587.

Another error complained of is as to the sufficiency and applicability of the charge of the court. It is objected that the reasonable doubt was not charged between the degrees of murder, and as between murder and manslaughter, and we are cited to the case of *Murray* v. *The State*, decided by this court at the Tyler term, 1876. In that case the court was specially asked to give such an instruction, and it was

refused by the court, and assigned as error. It was said, in commenting upon the propriety of such a practice : "There are, as it appears to us, many good reasons why this rule (of charging the reasonable doubt between the different degrees) should be adopted. Oftentimes it is of as great and vital importance to a defendant to have the benefit of whatever reasonable doubt may arise, in determining the grade and degree of his crime, as in adjudging the general measure of his guilt." And in that case it was held to be error that the court refused the instruction. The doctrine there laid down is approved by us as correct, and we commend the adoption of the practice, as therein approved, to the consideration of the lower courts in all cases of murder where it becomes necessary to charge upon the different degrees. In the case we are considering no such special instruction was asked, and it doubtless would have been given had the attention of the court been specially called to it.

The other objections to the charge, we think, are in the main fully met by the following paragraph, viz. : " You are further instructed that, if you believe from the evidence that at the time of the killing of deceased by defendant—if you find that he was killed by defendant—the deceased was attempting to shoot, and was in the act of shooting, defendant with a pistol, or of drawing a pistol or other deadly weapon upon defendant, and that defendant, from the acts of the deceased then being done, had a reasonable expectation or fear of death or some serious bodily injury, then about to be inflicted upon him by the deceased, and that he shot and killed deceased in order to save himself from said injury then about to be inflicted, and not in pursuance of a design theretofore formed by defendant, you will find him not guilty."

But the judgment in this case must be reversed for the other reason stated and assigned as error, namely, that

the record fails to disclose any arraignment of, or plea of not guilty by, defendant. See *Early* v. *The State* and *Smith* v. *The State*, decided by this court at the Tyler term ; and *Plasters* v. *The State*, decided at the present term.

*Reversed and remanded.*