Boyle v. The State.

Filed Sept. 24, 1884.

No. 11,905.

## BOYLE v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Self-Defence.*—*Character of Deceased.*—*Evidence.* —In a trial for murder the defence was that the homicide was committed in self-defence. The defendant testified as a witness that when he shot the deceased the latter was striking at him with a knife, and that their acquaintance was a brief association as criminals. An offer to testify that the deceased had but the night before told the defendant of two felonious assaults which he had committed, and that he preferred a knife to a pistol as more effective for such work, was refused by the court. *Held*, that this was error.

SAME.—*Dying Declarations.*—A dying statement by the victim of a homicide, that the defendant had no reason for making the deadly assault, is, admissible in evidence, being the statement of a fact, and not an opinion. ZOLLARS, J., dissents.

From the Criminal Court of Allen County.

*H. Colerick* and *W. S. Oppenheim*, for appellant.

*F. T. Hord*, Attorney General, and *C. M. Dawson*, Prosecuting Attorney, for the State.

NIBLACK, J.—This was a prosecution for murder, under section 1904, R. S. 1881.

The indictment was in six counts. The first count charged the appellant, William Boyle, with having, on the 15th day of March, 1884, at the county of Allen, in this State, unlawfully, purposely, feloniously, and with premeditated malice, killed and murdered one Daniel Casey, by then and there shooting him to death with a pistol. A jury found the defendant guilty of murder in the first degree as charged above in the first count of the indictment, and fixed his punish-

ment at death. After considering and overruling a motion for a new trial, the court pronounced judgment upon the verdict, and sentenced the defendant to be hung on Wednesday, the 1st day of October, 1884.

A freight train running from Crestline, in the State of Ohio, to Fort Wayne, in this State, stopped at Monroeville, in Allen county, early in the morning of the 15th day of March, 1884. One of the brakemen on the train found the defendant and Casey together in a box-car, in which they had been riding without authority from the conductor. The brakeman ordered both of them to leave the car, which they did without unnecessary delay. After coming out of the car, the defendant and Casey fell into a quarrel about something to which no one else gave attention. They proceeded together along one of the streets of Monroeville for a short distance when they came to a stop a few feet apart. At this point the defendant, being seemingly very angry and much excited, declared his intention to kill Casey, and, suddenly drawing a revolving pistol from one of his pockets, fired upon him, inflicting a mortal wound from which death ensued two and a half days thereafter.

The defendant, testifying as a witness in his own behalf, stated that he had first met Casey at Bucyrus, Ohio, on the 12th day of March, three days before reaching Monroeville; that they immediately became acquainted and confidential; that on the afternoon of that day they went to a town fifteen miles north of Bucyrus, the name of which he did not remember, where, during the ensuing night, they burglariously entered some stores, by which means they obtained a large lot of knives, some razors, and a considerable amount of jewelry, all of which they concealed about their persons; that they proceeded thence, partly on foot and partly by railroad, to Lima, Ohio, where, on the night of the 14th of March, they got on to the freight train upon which they were found next morning at Monroeville; that during the night they drank considerable quantities of intoxicating liquor; that

when the brakeman ordered them out of the box-car, he, the defendant, offered him, the brakeman, one of the stolen knives to conciliate him; that Casey, on that account, became very angry and abusive to him, the defendant, saying, amongst other things, that if he, defendant, ever made so bad a "break" as that again, he, Casey, would kill him; that it was in this way that the quarrel ending in the shooting began; that at the time he, defendant, shot Casey, the latter was, and had been, striking at him with a knife; that, in consequence, the shooting was in self-defence.

Counsel for the defendant thereupon offered to prove by him that while on the freight train between Lima and Monroeville Casey told him, the defendant, that he, Casey, had shot one Fontaine, city marshal of Springfield, Illinois, while the latter was trying to arrest him for a robbery; that he had also stabbed a man at Paris, in the State of Illinois, for which he was sent to the State's prison at Joliet, and that he, Casey, had quit carrying a pistol, as he had ascertained that a knife did its work much more quietly and with better effect. But the prosecuting attorney objecting, the court refused to permit the defendant to make the proposed proof, upon the ground that evidence of particular acts of criminal misconduct, even by his own admissions, was not admissible to establish Casey's bad character as a violent and dangerous man, or in mitigation in any other respect, and that refusal has been made one of the principal questions upon this appeal.

In the case of *Dukes* v. *State*, 11 Ind. 557, this court said: "As a general rule, it is the character of the living—the defendant on trial for the commission of crime—and not of the person on whom the crime was committed, that is in issue, and as to which, therefore, that evidence is admissible. But, in a case like the present, where the question arises whether the accused acted, in the commission of a homicide, upon grounds that justify him in the deed, it would seem that the character of the deceased might be a circumstance to be taken into consideration. Especially might this be the case, where the accused

Boyle *v.* The State.

knew that character, and also knew, at the time, the individual by whom the attack upon him or his property was made."

In the later case of *Fahnestock* v. *State,* 23 Ind. 231, this court further said: " If the deceased was in the habit of becoming intoxicated, and when in that condition was quarrelsome and violent, and that fact was known to the defendant, and if it is further claimed that the deceased was intoxicated at the time the defendant met him in the saloon, a short time before his death, and that the defendant's conduct on that occasion is claimed to have been influenced by a knowledge of the alleged violent habits of the deceased when so intoxicated, the question of such habits or disposition would seem to be one of *fact* rather than of general character."

Wharton, in his work on Criminal Law, states the rule to be " that, whenever it is shown that a person is himself attacked, it is admissible for him to put in evidence whatever could show such attack to be felonious. He may thus prove that the person assailing him had with him burglar's instruments. He may prove him to be armed with deadly weapons. He may prove him to have been lurking in the neighborhood, on other plans of violence. He is entitled to reason with himself in this way: ' This man comes to my house masked, or with his face blacked; he is the same who has been prowling about in the neighborhood, and is connected with other felonious plans; I have grounds to conclude that such is his object now.' And if so, he is also entitled to say: ' This man now attacking me is a notorious ruffian; he has no peaceable business with me; his character and relations forbid any other conclusion than that his present attack is felonious.' And if such could be a legitimate reason for him to expect and defend himself against a desperate conflict, the facts are such as he is entitled to avail himself of on trial. He must first prove that he was attacked; and this ground being laid, it is legitimate for him to put in evidence whatever would show he had ground to believe such attack to be felonious." Vol. 1, section 641. The case of *Hor-*

*bach* v. *State*, 43 Texas, 242, is a well considered case and gives an able exposition of the law of self-defence. The doctrine it announces is well supported by the authorities cited by it, as well as by the modern current of judicial opinion. It holds in brief that the habit of the deceased of carrying weapons, and his character for violent and passionate conduct, as well as other peculiarities constituting him a dangerous adversary, may, when the proper foundation is laid, be proven as distinct facts, and as part of the *res gestœ*, when such facts which might be reasonably supposed to have had an influence upon the defendant's mind in inducing the belief either that his life was in danger, or that some great bodily harm was likely to result to him. This case impresses us as being not only well supported by authority, but as being also in accord with the principles of justice, and of sound morality. It is cited and commented upon approvingly in a late edition of Greenleaf on Evidence. See vol. 3, 14th ed., sections 27 and 28 and notes.

As, in personal conflicts, every man is permitted, within reasonable limits, to act upon appearances and to determine for himself when he is in real danger, it would seem to follow, as an inevitable consequence, that whoever relies upon appearances, and a reasonable determination upon such appearances, as a defence in a case of homicide, ought to be allowed to prove every fact and circumstance known to him, and connected with the deceased, which was fairly calculated to create an apprehension for his own safety. Any narrower rule than this would, we think, prove inadequate to full justice in all cases of homicide, and would, in many cases, operate as a serious abridgment of the law of self-defence.

When properly construed, the rule recognized by the case of *Horbach* v. *State, supra*, simply permits all the facts and assumptions upon which a defendant acted, under a claim of self-defence, in taking the life of his adversary, to be proved at the trial, and, as thus construed, we know of no rule more in accordance with the principles of justice.

Boyle v. The State.

In the light of the authorities cited, and of our deductions from the general principles enunciated by them, we can only come to one conclusion, and that is, that the court erred in excluding the proposed testimony of the appellant as to the communications made to him by Casey concerning himself, during the night preceding the homicide, and that for that error the judgment will have to be reversed.

One question remains which ought to be ruled upon at the present hearing to relieve the embarrassment which might otherwise result when the cause shall be again tried. The dying declaration of Casey, which had been reduced to writing, was, after satisfactory preliminary proof, read in evidence by the prosecuting attorney, as follows:

" Dying declaration of Daniel Casey, taken at Monroeville, Allen county, Indiana, on the 16th day of March, 1884. Q. What is your name and residence? A. Daniel Casey; Norwich, Connecticut. Q. Have you given up all hope of life? A. I have, of course. Q. Is this declaration which you now make free from all malice? A. Yes, it is; I forgive him. Q. What is the name of the man who shot you? A. I don't know his name. Q. Where were you when he shot you? A. On the corner of Railroad and Empire streets, in the town of Monroeville, Allen county, Indiana. Q. Was the man whom you identified on the 15th of March, in the presence of the marshal of Fort Wayne, J. B. Neezer, Dr. C. A. Lester, and others, the man who shot you? A. Yes, sir; that was the man who shot me. Q. What reason, if any, had the man you have so identified for shooting you? A. Not any that I know of; he said he would shoot my damned heart out. Q. What were you doing at the time the shooting took place?

his
" DANIEL ✕ CASEY."
mark.

It was objected that this declaration was inadmissible in evidence: *First.* Because it was in the form of a deposition. *Secondly.* Because the answer to the question " What reason,

if any, had the man for shooting you?" was a mere expression of an opinion by Casey, in disregard of the inhibition imposed by the case of *Binns* v. *State*, 46 Ind. 311. *Thirdly*. Because it was incomplete by reason of the failure of Casey to answer the last question addressed to him.

In the first place, a dying declaration may be made in answer to questions addressed to the dying man and reduced to writing. 1 Greenl. Ev., section 159 and note; *Com.* v. *Haney*, 127 Mass. 455; *State* v. *Martin*, 30 Wis. 216.

In the next place, the words "what reason," referred to in the second objection, were, in the connection in which they were used, synonymous with the phrase "what cause," and plainly had reference to facts within Casey's knowledge, and not to opinions merely which he might have entertained. Casey's answer, "Not any that I know of," was more in the nature of the denial of a fact than the expression of an opinion.

In the case of *Wroe* v. *State*, 20 Ohio St. 460, the court held that "There is no valid objection to the admission of the evidence of Smith Davison as to the dying declarations of the deceased. The declaration of the deceased, in speaking of the fatal wound, that, 'it was done without any provocation on his part,' is objected to as being mere matter of opinion. Whether there was provocation or not, is a fact, not stated, it is true, in the most elementary form of which it is susceptible, but sufficiently so to be admissible as evidence."

The conclusion reached in that case is sustained in principle by the cases of *Rex* v. *Scaife*, 1 M. & R. 551, and *Roberts* v. *State*, 5 Tex. Ap. 141, and the precedent it affords may, as we believe, be safely followed in its fairly analogous application to the question now before us. See, also, Whart. Crim. Ev., sec. 294.

In the third place, the declaration was complete as to the answers to all questions which it purported to answer, and in that sense it was not fragmentary within the meaning of the case of *State* v. *Patterson*, 45 Vt. 308 (12 Am. R. 200). Besides, the failure of Casey to answer the last question was

sufficiently explained by his attending physician. In our opinion, therefore, the dying declarations of Casey were properly admitted in evidence.

The judgment is reversed, and the case remanded for a new trial.

Filed Sept. 27, 1884.

## DISSENTING OPINION.

ZOLLARS, J.—I concur in the opinion of the court as prepared by Mr. Justice NIBLACK, except so much thereof as holds competent to go to the jury that portion of the dying declarations of Casey in which he stated that appellant had no reason for the shooting that he, Casey, knew of. In cases of this sort the following propositions are settled beyond controversy :

*First.* The declarations of the deceased are admissible only as to matters to which he would have been competent to testify if sworn in the case. *Montgomery* v. *State,* 80 Ind. 338 (41 Am. R. 815) ; *Binns* v. *State,* 46 Ind. 311 ; 1 Greenl. Ev., section 159 ; Roscoe Crim. Ev. 32 ; Whart. Crim. Ev. 294 ; 1 Whart. Crim. L. 678 ; 1 Phillipps Ev., annotated by Cowen & Hill, p. 297 ; *Warren* v. *State,* 35 Am. R. 745 ; *McPherson* v. *State,* 22 Ga. 478 ; Taylor Ev., p. 644.

*Second.* Such declarations must, therefore, be of facts, and not of opinions, belief, conclusions, or inferences from facts. Cases, *supra.*

*Third.* Such evidence is only admissible under a rule of necessity, constitutes the only case in which evidence is admissible against the accused without the opportunity of a cross-examination, and the right of the accused to meet the witnesses face to face, as provided by the Constitution, R. S. 1881, section 58, and hence must be received with great caution. Roscoe Crim. Ev. 35 ; *Nelms* v. *State,* 13 S. & M. 500 ; *Montgomery* v. *State, supra; People* v. *Sanchez,* 24 Cal. 17 ; *Leiber* v. *Com.,* 9 Bush, 11 ; *State* v. *Williams,* 67 N. C. 12.

One of the grounds for the exercise of caution, as stated

by Roscoe is, that the deceased may have stated his inferences from facts concerning which he may have drawn a wrong conclusion.

It should be remembered in dealing with the case before us, that appellant based his defence solely upon the ground that the killing was justifiable, because done in self-defence. He was a witness in the case, and admitted the killing. If I recollect correctly, the shooting by him was proved by other witnesses. There was, therefore, no pressing necessity for the dying declarations, at least, not as to the act of the shooting by appellant. The only really important controverted question in the case was, as to whether the killing was justifiable; whether appellant had any sufficient " reason " for shooting as he did; any " reason " that would render the shooting justifiable. If he had, he was not guilty of murder; if he had not, or had not reasonable grounds to apprehend death or great bodily harm at the hands of Casey, he was guilty of murder. Whether appellant had sufficient " reason " for the shooting, was, and now that a new trial is ordered is, the important question to be settled. He is to be convicted, or acquitted, as it may be found that he had, or had not, sufficient " reason."

That question is all there is of the case. As said by counsel for the State, the dying man might just as well have said there was no "justification " for the shooting. Shall that question be settled by the one comprehensive statement by the dying man, that there was no " reason," or "justification," and that hence appellant is guilty of murder, or shall it be settled by the jury upon all the facts and circumstances attending the shooting?

Following the declaration that there was no reason for the shooting, was the further declaration that " it was cold-blooded." This the trial court struck out, and did not allow it to go to the jury. It seems to me that one declaration was just as competent as the other. If there was no reason, the shooting was cold-blooded, and the crime was murder in the

first degree. Both statements were conclusions, which should have been left to the jury to draw from the facts in the case.

The majority opinion is based upon the assumption that the dying declaration as to there being no "reason" is the statement of a fact, such as a witness might make from the witness stand, and this assumption is based upon the cases of *Wroe* v. *State,* 20 Ohio St. 460, *Roberts* v. *State,* 5 Tex. Ap. 141, and *Rex* v. *Scaife, supra.*

It must be observed, in the first place, that in the Ohio case there was no claim that the killing was in self-defence, and hence the question of "reason," or "provocation," was not so vital as in the case before us.

I can not subscribe to the doctrine of that case, especially when applied to a case like this, where the question of self-defence is really the whole case. I do not think that that case is supported by authority or reason. I find no word of approval of the case in any of the text-books. The reference to it is, generally, in such way as to show that it is regarded as an exceptional case. The whole of the reasoning in that case, upon the question, is as follows: " The declaration of the deceased, in speaking of the fatal wound, that 'it was done without any provocation on his part,' is objected to as being mere matter of opinion. Whether there was provocation or not, is a fact, not stated, it is true, in the most elementary form of which it is susceptible, but sufficiently so to be admissible as evidence. In *Rex* v. *Scaife,* the declaration of the deceased was: 'I don't think he would have struck me if I had not provoked him.' This was received to prove the fact of provocation on the part of the deceased. 1 Moody & Rob. 551."

In the Texas case, no question was before the court, because the dying declaration was admitted without objection or exception (p. 149). The statement by the wounded man was that the prisoner had killed him for nothing. In speaking of this declaration, and after stating that nothing can be evidence, in a declaration *in articulo mortis,* that would not

be so if the party were sworn, and that what a person *in articulo mortis* says as to the facts is receivable, but not what he says as a matter of opinion, the observations of the court are closed, with a quotation from Wharton, as follows: "'But when, in making a dying declaration, the declarant, in speaking of the fatal wound, said it was done without any provocation on his part, it was held in Ohio that this declaration was not incompetent, it relating to fact, not opinion.' Wharton Hom., section 765; *Wroe* v. *State*, 20 Ohio St. 460." It will thus be observed that there was nothing before the court to decide, and that nothing was really decided.

That the argument in the Ohio case clearly involves a *petitio principii*, must be apparent upon the most casual examination. The very point in controversy is at once assumed, viz., that what the dying man stated, was a fact, and not a conclusion or opinion.

The doctrine of the Ohio case, and the Texas case, so far as it may be said that it is an endorsement of the former, are squarely met in the case of *Collins* v. *Commonwealth*, 12 Bush (Ky.) 271, decided since the decision in the Ohio case. The dying declarations offered in this case were, "That Michael Collins killed me, and killed me for nothing." The court after holding that dying declarations are admitted on grounds of necessity, said: "In this case it was unnecessary to prove the declarations of the deceased to establish the fact that the killing was done by the accused. That fact was abundantly proved by several uncontradicted witnesses, and was virtually admitted by the line of defence adopted. The statement that Collins killed the deceased 'for nothing' was but the expression of an opinion, and was clearly inadmissible. 1 Taylor Ev., p. 644."

In the case cited from Moody & Rob. it will be observed that the declarations were in favor of the prisoner. It has been held in Kentucky, that a more liberal rule should be applied in such cases; that when the declarations are offered against the prisoner, they should be confined to facts, and

not allowed to extend to mere matters of opinion, but when in favor of the prisoner, as that he was not to blame, they may be admitted.. *Haney* v. *Commonwealth*, 5 Crim. L. Mag., p. 47. On the other hand, it has been ruled that such declarations are not admissible, even in favor of the prisoner. *McPherson* v. *State*, 22 Ga. 478.

I think that the declarations in the Ohio and Texas cases, and in the case before us, were neither of them declarations of facts, but of inferences and opinions, and, being against the accused, were incompetent. Whether appellant had sufficient " reason," " provocation," or "justification," is a fact, but not such a fact as a witness may state; it is the ultimate fact to be found from the facts and circumstances attending the killing; an inferential fact. It can not be settled by the physical senses; it can neither be seen, heard nor felt, but must be the result of mental process; the result of reasoning from other facts. This reasoning may, or may not, create a belief or opinion of the existence of that ultimate fact. All persons will not reason alike, and may not come to the same conclusion from the given facts. Upon the facts and circumstances of the killing, one may conclude that appellant had ample reasons for shooting in the manner and at the time he did. Another, upon the same facts and circumstances, may conclude that he had no reasons at all. The jury may be able to harmonize their several conclusions, and return a verdict as to the ultimate fact. How shall they get at that fact? Shall they perform the mental process, and make the inference, and form their opinions from the facts and circumstances attending the killing, or shall that be done for them by the witnesses—in this case by the dying man? Shall he give to the jury the facts and circumstances, or shall he give to them simply the fact that he has inferred from those facts and circumstances—his opinion upon those facts and circumstances? The rulings have been pretty uniform that dying declarations of the personal identity of the slayer are competent, and, as said in the case of *State* v. *Williams*, *supra*, in such identifi-

cation there is necessarily involved somewhat of opinion, because it is a conclusion drawn from a comparison of the appearance of the person at one time with the recollection of his appearance at some other time, but the admission of such evidence is an exception to the general rule excluding opinions, founded on the necessity of the case. It would be very difficult, if not impossible, to describe these appearances, even of those best known to us. It was said in the North Carolina case, *supra :* " But there must be some limit to the exception ; a witness can not be allowed absolutely to substitute his judgment for that of the tribunal to whom the law has committed the decision of the fact. Best Ev., sections 344-5-6. We think the limit may be drawn without any difficulty, and consistently with the habitual practice of courts. Whenever the opinion of the witness upon such a question, or on one coming under the same rule, is the *direct* result of observation through his senses, the evidence is admitted. *  *  * But if the opinion of the witness is the result of a course of reasoning from collateral facts, it is inadmissible. * * * In such case the tribunal is as competent to reason out the resultant opinion as the witness is ; and by the theory of the law, it alone is competent to do so."

In the case before us, there could be no difficulty in stating the facts and circumstances attending the killing, and hence there was no necessity for the expression of an opinion or inference by the dying man. Could the jury have those facts and circumstances, they might disagree with him as to the existence of a " reason " for the shooting. Suppose he had been sworn as a witness in the cause, would it have been competent for him, in answer to appellant's claim of self-defence, to have stated that appellant had no "reason" or "justification " for the shooting ? Clearly not. He would have been required to give, not his opinion or inference, but the facts, so that the jury, under the instructions of the court, might draw the inference and form the opinion as to whether ap-

pellant had such "reason" as rendered the shooting justifiable.

This should be especially so in dying declarations, where there is no opportunity for cross-examination, and to thus get at the facts. *Shaw* v. *People*, 3 Hun, 272. A cross-examination might develop the facts, and thus show that there is no ground for the opinion. In this case, if the dying man had stated the facts, it might be apparent at once that appellant had ample "reasons," and that the shooting on his part was justifiable.

The cases are not infrequent where dying persons have made positive statements as to the cause and authors of their death, and at the same time stated the facts which showed that their statements as to cause and authors were mere conjecture, inference and opinion. Wharton Hom., section 765; *State* v. *Williams*, 68 N. C. 60; *Shaw* v. *People, supra; People* v. *Shaw*, 63 N. Y. 36; *Warren* v. *State*, 35 Am. R. 745.

If in the case before us it would have been competent for the wounded man to state as a witness that appellant had no "reason" for the killing, or, which is the same thing, if it was competent for him to put that statement in his dying declaration, then clearly it would have been competent for appellant to have stated as a witness in his own behalf that he did the shooting, and that it was for sufficient reason, and hence justifiable. To have stated this, would have been to state the whole case. This, clearly, he would not be allowed to do. As a witness, he must state the facts. The jury will decide upon those facts, as to whether or not there was a sufficient reason for the shooting. I regard the question under discussion as of great importance, and the decision by the majority upon it as far-reaching and serious in its consequences. This is my excuse for extending this dissenting opinion to the length I have.

Filed Sept. 27, 1884.