Statement of the case.

WASHINGTON JONES *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Evidence. Admissibility. Dying declaration. Opinion. Fact.*

   The admissibility of a dying declaration is to be determined by the court, and where the declaration is manifestly the statement of an opinion, although in form one of fact, it is inadmissible.

2. SAME.

   If it be unreasonable to construe a dying declaration as one of fact, its admission in evidence, over objection, will be reversible error, although the jury be instructed to disregard it if from the evidence they believe it was the mere expression of an opinion.

3. SAME.

   In the trial of a murder case, where the only issue is who did the killing, the dying declaration of the decedent to the effect that the defendant shot her, is inadmissible if it be manifest from the surroundings that the declarant could not have seen, or otherwise known, the party who fired the fatal shot.

FROM the circuit court of, first district, Hinds county.

HON. ROBERT POWELL, Judge.

Jones, the appellant, was indicted, tried and convicted of the murder of one Ella Bradley, by shooting her, and was sentenced to be hanged. From the judgment and sentence he appealed to the supreme court. The principal error assigned was that the court below erred in admitting the dying declaration of Ella Bradley. The facts as to the shooting are as follows: Deceased was in a room with several other persons, sitting near the fireplace, with her side or back to a window. It was night, and the room was lighted, but it was dark outside. The window shade was down, being slightly raised at one corner, so as to expose the lower part of one of the windowpanes of glass in the bottom row of the lower sash. Some one on the outside

of the house shot deceased through this window and through the exposed windowpane, the bullet striking her in the back part of the right side. She died in a short while after she was shot. Gordin, a witness for the state, testified that he was at the house of Ella Bradley a short time before her death, and, after she knew she was going to die, he asked her who she thought shot her, and she said it was Wash Jones; that Jones, the defendant, had told her that he was coming to her house that night, and, if he saw any other negro man talking to her, he would kill her, and no one would know it. This testimony was objected to by defendant, the objection was overruled, and defendant excepted.

*Robert B. Ricketts* and *William Williams*, for appellant.*

Appellant contends that the statement admitted in evidence as the dying declaration of the deceased is not a declaration of fact, but that it is merely the expression of an opinion, and therefore should not have been admitted in evidence against him, and that the admission of the same constitutes error for which this case should be reversed. The rule that there are always two principal tests to be applied to statements offered in evidence as dying declarations, namely: Was the declarant at the time of making the statements suffering from injuries in their nature fatal, actually *in extremis*, and fully aware that he was in such condition? and was the subject-matter and substance of the declaration such as to have been admissible as the testimony of a competent living witness, delivered in open court? is too universally accepted to need any argument here. In all the cases cited these principles are fully recognized. As to the fulfillment of the first of these prerequisites, the appellant has raised no contention. It was on the second of these principles that the defense based its objection and consequent exception on the trial. The statements admitted by the court as dying declarations, and objected to by the attorneys for ap-

---

* This brief is given in full on the points decided, by order of the court.

pellant on the trial, are found detailed by state witnesses Sylvia Stevens and I. L. Gordin in the transcript. The principle of the law of evidence that statements of opinions are not admissible as dying declarations is too well known to call for any extended discussion. We merely refer for a statement of the law on this point to 10 Am. & Eng. Enc. L. (2d ed.), 376–379, inclusive, and the notes and cases found on those pages. We refer especially to the cases cited in the notes under the head of "declarations identifying defendant." We also refer to 1 Greenl. Ev. (16th ed.), § 159, and to Gillett, Ind. & Col. Ev., ch. 6, and especially sections 199 and 202, and the cases cited under those sections.

Were the statements made by the dying woman, Ella Bradley, statements of a fact or of an opinion? We find the facts as to the conditions and surroundings at the time deceased was shot as follows: Deceased was in a room with several other parties. She was sitting, not near the window through which the bullet that killed her passed, but by the fireplace, on the opposite side of the room; not facing the window, but almost with her back to it. The room was lighted, and it was dark outside. The window-shade was drawn down, being slightly raised at one corner, so as to expose only the lower part of one of the panes of glass in the bottom row of the lower sash, this being the part through which the woman was shot. The bullet struck her in the back part of her right side. Immediately, upon the report of the pistol, the room was filled with smoke. Now, when we take into consideration this undisputed statement of facts, we are forced to the conclusion that it was absolutely absurd to contend that the deceased could have seen her slayer; and, if she could have seen him, the further conclusion inevitably follows that her statement that Wash Jones, the appellant, shot her, is merely the expression of an opinion; and that the trial court erred in letting it go to the jury as a dying declaration. And this is true even though we should reach the conclusion that this statement is that of an opinion solely from

the physical facts as testified to by the witnesses.    If the court believes that this was a statement of an opinion, we do not see how it can fail to hold that it was error to admit it.    See 10 Am. & Eng. Enc. L. (2d ed.), 377, and the cases cited.    We are of the opinion that it is impossible for any reasonable mind to believe that the deceased saw her slayer.    The physical facts demonstrate clearly to our minds that it was absolutely impossible for the deceased to have seen the party who assassinated her.    The strongest possible evidence that one could have that the dying woman, in the statements that she made, was expressing merely an opinion, and not making a declaration of fact, is found in the repeated statements of the witness, Gordin, in the transcript.    From them we learn the reason on the part of the deceased for her belief that Wash Jones shot her.    We give it in her own words, as repeated by the witness, Gordin, "He told me yesterday that he was going to do it."    Thus, on her own authority, and from her own statement, the conclusion is irresistible that, when the deceased made the statement that Wash Jones shot her, she was, beyond any possible doubt, stating, not a fact, but an opinion.    All the testimony relative to this alleged dying declaration was, therefore, improperly admitted, and its admission constitutes error, for which this case should be reversed.    In support of our contention as to the error of admitting this testimony, we call the court's attention to the following authorities: *Berry* v. *State*, 63 Ark., 382 (38 S. W., 1038); *Jones* v. *State*, 52 Ark., 345 (12 S. W., 704); *Binns* v. *State*, 46 Ind., 311; *State* v. *Williams*, 67 N. C., 12; *Green* v. *Com.* (Ky.) (18 S. W., 515); *People* v. *Wasson*, 65 Cal., 538 (4 Pac., 555); *State* v. *Parker*, 96 Mo., 382 (9 S. W., 728).    . We especially invite the court's attention to the above authorities, as they do not only support our contention as to the law, but are similar to the case at bar with respect to the facts.    We most particularly direct the court's attention to the cases in 52 Ark., 18 S. W., 67 N. C., and 46 Ind., where the facts are extraordinarily similar to those in the present case.

We, also, should like to impress upon the court the fact that the trial court did not make a sufficient preliminary examination as to the competency of this statement purporting to be a dying declaration. There were present in the room where and at the time when the shooting took place several persons, and no witness was examined by the trial court when investigating into the competency of the alleged dying declaration, except witnesses Stevens and Gordin. We submit that the trial court should have made a more thorough examination into the facts and circumstances relative to the making of the statements offered by the state as constituting the dying declaration of Ella Bradley, deceased. In the preliminary examination, before passing upon the testimony of Sylvia Stevens, this court will note that no witness was examined by the court below except Sylvia Stevens alone; and this in spite of the fact that there was another witness summoned by the state who had knowledge of, and afterwards testified to, the alleged declaration. Certainly, too, the facts as shown by the record are not sufficient to remove every reasonable doubt as to the competency of the statements offered in evidence as dying declarations. "A statement purporting to be a dying declaration should be excluded if there is a reasonable doubt as to its competency, and the court should make full inquiry into all the circumstances pertaining to it before passing on its admissibility." *Bell* v. *State*, 72 Miss., 507 (17 So. Rep., 232).

If there was error in the admission of the alleged dying declaration, was that error cured by the instructions for the defense? We submit to the court that this question, also, is properly answered in the negative. The whole question as to whether or not the error in admitting the dying declaration was cured by the instruction for the defense, seems to us to be settled by the decision of our own court in *McDaniel's case*, reported in 8 Smed. & M., 401, where the high court of errors and appeals held (see, also, George's Digest) that the court must decide, after a preliminary examination into the circum-

stances under which they were made, as to the admissibility of dying declarations. When admitted, the jury is to judge of the weight to attach to them, as they do of all other testimony. But it will be illegal for the court to submit to them, by its charges, the questions of fact on which their admissibility depends, and to charge them that, if they have not been legally proven to be dying declarations, they must disregard them. See, also, Nelm's case, 13 Smed. & M., 500 (5 Am. Dec., 94). The first cited case seems to settle beyond any chance of dispute the question as to whether or not the instructions operated to cure the error of the improper admission of the so-called dying declaration. Certainly, in the light of this case, there is not the slightest doubt that the error was not cured by the instructions. See *Chism* v. *State*, 70 Miss., 742 (12 So. Rep., 852). And, by analogy, *Williams* v. *State*, 72 Miss., 117 (16 So. Rep., 296). And, even if this is not the case, surely, in view of the manifest error in the admission of the testimony, this court will not hesitate to reverse the present case.

Certainly, whatever may be contended by the attorney-general to the end that this court ought not to reverse in this case, but should affirm it, even though there was error in the admission of the so-called dying declaration, this court will not undertake to do anything of that kind; thus attempting to say whether or not, and, if at all, how far the minds of the jury were influenced by the statements admitted as the dying declaration. Especially should this be unlikely where, as in the case at bar, there was no direct evidence as to the identity of the person who committed the crime, and, with the sole exception of the alleged dying declaration, nothing direct to connect appellant with its commission. The court instructed the jury, in substance, that unless they believed that deceased saw appellant at the window through which the bullet passed that killed deceased, they should disregard the statement purporting to be a dying declaration. We contend that the court attempted here to place the responsibility of deciding the admissibility of this

declaration upon the jury. This was error. It is absolutely impossible for the court or anyone else to say just what weight the alleged dying declaration had upon the jury. After taking into consideration the whole testimony in the case, the jury said by its verdict that the appellant was guilty. We know by theory and from experience that a thing will influence one mind while it would have no effect upon another. It was contended in the lower court, and may be contended here, that there was sufficient testimony without the alleged dying declaration to warrant the jury in finding a verdict of guilty. We are of the opinion that it would be a very dangerous precedent for this court to attempt to say just what weight certain statements had or ought to have had upon the mind of a juror. Each juror reaches a conclusion from the whole testimony. If in this case the alleged dying declaration had not gone to the jury, we are unable to say beyond a reasonable doubt what the verdict would have been, knowing as we do that one mind is influenced by one thing, and another by another. If this alleged dying declaration had not gone to the jury, it is very probable indeed that the defendant would not have been convicted and sentenced to pay the death penalty. Therefore we submit that, if this alleged dying declaration was not admissible, this case should be reversed. Of course the appellant does not complain of the instructions on the point of the circumstances and accompanying statements of the dying declaration, as these instructions were asked by him on his trial, but he does most earnestly complain of the circumstances that forced him to ask them.

*Monroe McClurg,* attorney-general, for appellee.

The testimony shows that beyond a reasonable doubt the dying declaration of the deceased was made *in articulo mortis,* and that the declarant was perfectly conscious of impending death. The correctness of the ruling of the learned trial judge in admitting the testimony of witness I. L. Gordin to the

dying declarations made to him may be doubted because he discloses the fact that the declarant gave as her reason for believing the accused shot her was that he had made a conditional threat the night before to do so on the night she was shot. It can hardly be said with confidence that, beyond a reasonable doubt, she expressed a fact based upon actual personal knowledge when she said it was the accused who shot her, rather than an opinion that it was he, based upon a previous threat. This is true, as his conversation with her upon his first visit at half past eight o'clock, and his second visit, when he carried the accused before her later in the night. Whar. Cr. Ev. (9th ed.), sec. 294.

The declaration made to Sylvia Stevens, made about ten o'clock, was certainly a declaration of fact. It not only fixed a conscious knowledge of present impending dissolution, beyond the slightest hope of recovery, both by words, groans and suffering, but she stated without qualification of any sort that the accused was the man who shot her.

When the trial judge was satisfied beyond a reasonable doubt that the declarations were made with a conscious conviction of being *in extremis*, it was not required of him to have every solitary person present examined as contended by counsel. Nor were counsel able by their rigid cross-examination of Sylvia Stevens to impair the credibility of the witness or destroy the weight of her testimony. Their argument to discredit her here is completely answered by the record which discloses a remarkably frank, fair witness intending to tell the truth.

Nor was the failure of this witness to disclose any reason given by the declarant as to why she believed it was the accused who shot her, fairly referable to the threat of the previous night, testified to by Gordin. Sylvia was her friend and of her sex and color. Indeed, this declaration being nearer dissolution, and after more absolute conviction of certain death, when she found that the ball had passed through her body, the law itself gives additional value to the statement as .

material evidence. This witness gave no suspicion that the declaration to which she testified was merely an opinion. She was pressed to give the very language and did so. Nelm's case, 21 Miss., 500 (506); Walker's case, 39 Ark., 221 (226).

Walker's case, *supra*, settles the admissibility of Sylvia Stevens' testimony as a declaration of fact. It also strengthens the grounds upon which the testimony of Gordin was admitted as to this point, if it does not remove all objections entirely. It will be noticed that the declarant never stated to anybody that she did not see the accused at the window when he fired the fatal shot. She gave one reason for accusing appellant, but, being an ignorant negress, in agonies of death, may have had other reasons which she did not state. The chances for seeing the accused at the window were much larger and more reasonable than those in Walker's case, and there are two facts in the instant case that invite the consideration of the proposition that it was proper to submit to the jury Gordin's testimony. The one is, she stated as a positive fact to Sylvia Stevens that he shot her; and the other is that the court instructed the jury, at the request of appellant, "that unless they believe from the physical facts offered in evidence that the deceased saw the defendant at the window through which the bullet passed that killed the deceased, they must wholly disregard the evidence offered by the state purporting to be the dying declaration of the deceased." And also, "that unless they believe from the evidence, beyond a reasonable doubt, that the deceased did know that the defendant shot her, they must wholly disregard the evidence offered by the state purporting to be the dying declaration of the deceased." Also, that if the jury believed the purported dying declaration "was the statement of opinion of the deceased, to wholly disregard it." So it is, the question as to whether the accused was seen by the deceased, and a stronger one than in Walker's case, was properly submitted to the jury under instructions that stretched full length in favor of the accused. Hence, the state submits that,

reviewing the whole finished case, if there was error on this point, it was very slight, and applied to only a part of Gordin's testimony.

Reviewing the whole case upon consideration of the motion for a new trial, the trial court felt thoroughly convinced of the correctness of the verdict, and declined to disturb it. It was a horrible assassination, and it is impossible for the mind to escape the conviction, even eliminating Gordin's evidence, that the appellant committed the crime.

The state earnestly insists, however, that because of the convincing character of all of the other testimony in the case, it is improbable that any material harm was done by admitting this testimony. The verdict was manifestly correct, and should not be disturbed. A vicious motive was proven, a repeated conditional threat was proven, the precise condition named was shown to have happened at the very moment the fatal shot was fired, the identical pistol exhibited by Jones at the time of making this threat was found in his possession (in his house, hidden), with one chamber freshly discharged, and this pistol was identified by the deceased, he was seen immediately before the shooting near decedent's house, going in that direction, and immediately afterwards excitedly hurrying homeward from the direction of her house, found by the officers in bed at an unusually early hour, and to them he denied knowing the woman (proven to be false), and denied having a "gun" (pistol) (proven to be false), and when confronted by the dying woman, who charged him to his face as being her murderer, he stood dumb as an oyster, and his excited demeanor in her presence are as strong circumstances as human testimony could make.

WHITFIELD, C. J., delivered the opinion of the court.

It was fatal error to admit in evidence the testimony of Gordin as to the dying declaration of Ella Bradley. It is manifest that she did not see, and could not possibly have seen, who shot her, and that she said appellant shot her simply be-

cause he had threatened to shoot her. She was, therefore, clearly not testifying as a fact that Jones shot her, but was merely stating her opinion that he must have shot her, since he had told her he was going to do so. This was not competent. All the evidence in the case as to the situation of the parties in the room and as to the manner of the killing, makes it too clear for disputation that she could not have seen the person who shot her. The killing was an atrocious assassination, and the chief point of inquiry was, who did the killing? There was no question as to the crime being murder. The only question was whether Washington Jones was the party who committed the murder. Identity being the sole issue involved, the tremendous importance of the dying declaration testified to by Gordin becomes at once manifest. This evidence is too vital to say that the error is not reversible. The attorney-general, with that admirable candor and fairness which have ever characterized his arguments to this court, recognizing it to be his duty as well to see that the innocent go free as that the guilty are punished, concedes that the admission of this testimony was error, endeavoring to show the error not to be a reversible one. But we think it is. Nor is the error cured by instructions 10 and 12. The twelfth instruction told the jury that, if they believed that the alleged dying declaration was the statement of an opinion, they should wholly disregard it. But it was for the court, not the jury, to say whether it was the statement of an opinion. Whether it was the statement of an opinion or of fact was a question as to its admissibility—a question for the court alone, the determination of which could not be left to the jury. *Lipscomb* v. *State*, 75 Miss., 600, 602 (23 So., 221, 222); McDaniel's case, 8 Smed. & M., 401; Chism's case, 70 Miss., 754 (12 So., 855).

The tenth instruction told the jury that, "unless they believed from the physical facts offered in evidence that the deceased saw the defendant at the window through which the bullet passed that hit the deceased, they should wholly disre-

gard the evidence offered by the state purporting to be the dying declaration of the deceased.'' But there is no evidence in the record which shows that deceased could have seen the defendant. On the contrary, she did not see him. The case is not like the case of *State* v. *Williams*, 67 N. C., 12, approved in Lipscomb's case, *supra*. It cannot be said here, ''from all the circumstances attending the declarant at the time of the killing,'' that it was reasonably probable that she had knowledge of what she stated as a fact. Lipscomb's case, 75 Miss., 607 (23 So., 224). The very contrary is apparent here.

We confine our observations to this single point—the error in admitting this part of Gordin's testimony. It is impossible to affirm confidently that the result would have been the same with this testimony out. We refer for authorities to the admirable brief of counsel for appellant, which we direct to be published in full, on this point.

*Reversed and remanded.*